

**IT IS ORDERED as set forth below:**

Date: August 4, 2022

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 21-59648-PMB |
| BAR SERVICES, LLC, | : | |
| | : | CHAPTER 11 |
| Debtor. | : | |
| | : | Subchapter V |
| | : | |

### ORDER DENYING MOTION TO RECONSIDER ORDER
### SUSTAINING OBJECTION TO CLAIM OF NEASIA DANIELLE DAVIS MALLON

Before the Court are the following matters filed by Neasia Danielle Davis Mallon ("Ms. Mallon"): (1) *Unsecured Creditor's Response to Debtor's Motion to Reduce Claim of Neasia Mallon* filed on July 15, 2022 (Docket No. 106)(the "Mallon Response"); (2) *Unsecured Creditor's Supplemental Response to Debtor's Motion to Reduce Claim of Neasia Mallon* filed on July 15, 2022 (Docket No. 107)(the "Supplemental Response"); and (3) *Unsecured Creditor's Motion to Vacate Order, To Open Default, and Extend Time for Filing Responses and To Permit Filing of Her Tardy Responses to Debtor's Motion to Reduce Claim of Neasia Mallon* also filed on July 15, 2022 (Docket No. 108)(the "Motion to Vacate"; collectively, with the Mallon Response

and the Supplemental Response, the "Motion to Reconsider").[1] The Motion to Reconsider was filed Ms. Mallon following entry of the *Order Granting Debtor's Objection To Claim Of Neasia Danielle Davis Mallon And Fixing Amount Of Claim* on July 7, 2022 (Docket No. 103)(the "Order Sustaining Objection to Claim").

The Order Sustaining Objection to Claim was entered on *Debtor's Objection to Claim of Neasia Danielle Davis Mallon* (the "Objection to Claim") and the *Notice of Requirement of Response to Debtor's Objection to Claim of Neasia Danielle Davis Mallon; of Deadline for Filing Response; and of Hearing* (the "Notice")(Docket No. 93), filed by Bar Services, LLC (the "Debtor") on June 3, 2022. A hearing on the Objection to Claim was scheduled for July 18, 2022. As reflected on the docket, copies of the Objection to Claim and Notice were served upon all parties-in-interest, including Ms. Mallon, pursuant to the voluntary notice procedures authorized in the *Second Amended and Restated Order*, General Order No. 24-2018. Responses were due within thirty (30) days, or on or before July 6, 2022 (the "Notice Deadline"). No party-in-interest filed a response to the Objection to Claim by the Notice Deadline, and upon review, the Court duly entered the Order Sustaining Objection to Claim without the necessity of a hearing.

In the Order Sustaining Objection to Claim, the Court allowed Ms. Mallon a general unsecured claim in the total amount of $23,922.06 and disallowed any further claim on her behalf. The Motion to Reconsider was filed eight (8) days later. The Debtor filed its *Response in Opposition To Motion To Vacate Order, To Open Default, And To Extend Time For Filing Response And To Permit Filing Of Her Tardy Responses To Debtor's Motion To Reduce Claim Of Neasia Mallon* on July 19, 2022 (Docket No. 109)(the "Debtor's Response"), which is also before the Court.

---

[1] As discussed herein, the Court will construe these pleadings as a Motion to Reconsider.

**Background**

The Debtor filed a petition for relief under Subchapter V of Chapter 11 of Title 11, United States Code on December 30, 2021. According to the Motion to Vacate (p. 2), Ms. Mallon's husband, Marc A. Mallon, was involved in the decision to file this Chapter 11 case, and Ms. Mallon provided a portion of the retainer for counsel for the Debtor. In short, Ms. Mallon and her husband have been aware of this case since its inception.

In the Debtor's original schedules filed in this case (*see* Docket No. 39), Ms. Mallon was listed as holding a $185,000 undisputed, noncontingent, liquidated general unsecured claim. This listing, had it remained, would have eliminated any requirement that she file a proof of claim to have a $185,000 allowed claim in this case.[2] It did not, however, remain. Instead, on March 25, 2022, the Debtor filed its *Plan of Reorganization* (Docket No. 66)(the "Original Plan"). In connection with the filing of the Original Plan, the Debtor amended its schedules and indicated that Ms. Mallon's scheduled $185,000 claim was "disputed." *See Amendment to Schedule E/F* (Docket No. 67). This amendment to the schedules triggered a requirement that Ms. Mallon file a proof of claim; however, because the Debtor never requested that the Court set a deadline for the filing of proofs of claim, Ms. Mallon's Claim is not time-barred on the basis of her failure to file a proof of claim.[3] The Debtor did not object to her Claim or oppose the Motion to Reconsider on the basis that a proof of claim has not been filed.[4]

---

[2] Federal Rules of Bankruptcy Procedure 3003(b)(1) & (c)(2).

[3] No proof of claim has ever been filed in this case regarding this claim.

[4] *See* Objection to Claim, ¶ 16, n. 3. Similarly, neither this Order nor the Order Sustaining Objection to Claim is based on Ms. Mallon's failure to file a proof of claim in this case. Instead, as outlined in more detail below, the ruling herein is based on the failure of Ms. Mallon to respond timely to the Objection to Claim, and her failure to offer any legitimate basis for excusing her untimeliness or to provide, even at this late date, adequate evidence that her Claim exceeds the amount already allowed.

The Original Plan was amended on May 4, 2022 by the *Modification to Plan of Reorganization* (Docket No. 77)(the "Amended Plan;" together with the Original Plan, the "Plan"). The Plan provides for Ms. Mallon's claim (the "Claim") in Class 6 stating as follows:

> Debtor scheduled the Class 6 Creditor as holding an unsecured claim of $185,000. Debtor intends to amend its schedules to reflect that the Claim of the Class 6 Creditor is disputed and will file an objection to same. Confirmation of the Plan does not constitute any determination of the nature, validity, or amount of the Class 6 Creditor.

Plan, Sec. 4.6, p. 17. The Court entered its *Order Confirming Plan Under Bankruptcy Code § 1191(b)* on May 19, 2022 (Docket No. 84).[5]

As recited in the Objection to Claim, in preparing the Plan, the Debtor through counsel had requested documentation in support of the Claim from Ms. Mallon and her husband via e-mail dated March 18, 2022. In response, Marc Mallon[6] provided 42 pages of documentation that allegedly supported the Claim, copies of which are attached to the Objection to Claim as "Exhibit A". Upon evaluation of the submitted materials, the Debtor's counsel replied via e-mail on April 1, 2022, that the documents did not "add up" to the Claim in the amount asserted and further requested an itemized spreadsheet, which was never offered. (A copy of this e-mail chain is attached to the Objection to Claim as Exhibit "B".) The Debtor included its own detailed analysis

---

[5] On April 5, 2022, the Court entered an *Order and Notice of Assignment of Hearing of Confirmation of Plan and Setting Deadline for Voting on the Plan, Objecting to the Plan or Objecting to Proposed Cure Amounts for Executory Contracts to be Assumed* (Docket No. 70)(the "Scheduling Order") and scheduled a hearing to consider confirmation of the Plan for May 16, 2022 (the "Confirmation Hearing"). This Scheduling Order and the Plan were timely served on Ms. Mallon. No party filed an objection to the Plan or appeared at the Confirmation Hearing in opposition to confirmation of the Plan, and the Plan was confirmed on May 19, 2022. Thereafter, on June 10, 2022, Marc Mallon filed a *Motion of Equity Holder to Amend Confirmed Plan and Accurately Reflect Ownership Interests in Debtor Bar Services, LLC* (Docket No. 94), seeking to amend the Plan to set forth what he alleged are the correct ownership interests in the Debtor. Construing the Motion to Amend as a motion to modify the Plan, the Court denied the Motion through its *Order Denying Motion to Amend Confirmed Plan* entered on July 1, 2022 (Docket No. 101)(the "Order Denying"). The Order Denying was not appealed and is final.

[6] Ms. Mallon states she is *pro se*, but Marc Mallon, who is assisting her in this matter, is stated to be her husband and an attorney in good standing in Georgia. Motion to Vacate (p. 2).

4

of the documentation provided in Exhibit "C" to the Objection to Claim. From a total asserted amount of $106,191.44 based on the aforesaid documentation, the Debtor acknowledged an amount due and owing on the Claim of $23,922.06.[7]

As mentioned above, Ms. Mallon did not file a timely response to the Objection to Claim. The Order Sustaining Objection to Claim was entered on July 7, 2022, allowing the Claim in the adjusted amount contended by the Debtor.

## Discussion

In the Mallon Response (p. 1), filed after entry of the Order Sustaining Objection to Claim, Ms. Mallon offered a "trimmed down version of the documents previously provided" allowing for those claims not attributable to the Debtor, in a revised approximate amount of $83,000. To this amount, she added $6,448 she claims to have paid to cover certain payroll checks to Jermaine Cruz.[8] In addition, Ms. Mallon alleges she has a claim for $104,000 arising from payments made for the Debtor's benefit under a Consent Final Order and Judgment for unpaid rent entered in a dispossessory action commenced in the State Court of Fulton County, Georgia on December 30, 2019, against the Debtor and others in favor of Roberts & Shefrin, LLC (the "Consent Judgment"). In the Supplemental Response, Ms. Mallon provided a copy of the Consent Judgment (attached thereto as Exhibit "A") plus copies of six (6) cashier's checks. Ms. Mallon contends this evidence

---

[7] As further indicated in the Objection to Claim, from a review of the Debtor's records, the Debtor states that it appears Ms. Mallon received at least $61,200.00 in 2020 and $37,708.93 in 2021 from the Debtor. Although the Debtor does not currently assert a right of setoff against the Claim, the Debtor reserves the right to do so should Ms. Mallon assert a claim beyond $23,922.06.

[8] The "evidence" submitted regarding this part of the Claim appears to be copies of checks issued to Mr. Cruz, whose position with the Debtor is not identified. No evidence is included about how those checks were "paid."

5

proves a claim of $122,322 for payments made pursuant to the Consent Judgment that she alone funded.[9]

Finally, in the Motion to Vacate, Ms. Mallon repeats her contention that she paid approximately $90,000 ($83,000 + $6,448) in unreimbursed business expenses for the Debtor plus $104,000 ($52,500 + $26,240 + $26,240) in satisfaction of the three (3) arrearage installments due under the Consent Judgment from her personal funds. Although she omits the $17,352 for January 2020 rent as asserted in the Supplemental Response, she adds that she provided $10,000 cash towards the $20,000 retainer requested by Debtor's counsel to file this bankruptcy case. Ms. Mallon maintains good faith efforts were made to supply the Debtor's counsel with the required proofs no later than June 29, 2022, prior to the Notice Deadline. Ms. Mallon also insists it would be inequitable to reduce the Claim from nearly $200,000 to $23,000. Ms. Mallon asks that the Order Sustaining Objection to Claim be vacated so that she may submit her documents.

In response, the Debtor asserts that its counsel has spent time and money attempting to "decipher" the documents provided by the Mallons in various states of disorganization, and that it has been requesting the documents that support the Claim since March of 2022. It adds that Ms. Mallon did not contest confirmation of the Plan (which indicated her Claim would be paid in a

---

[9] Upon review, the documents actually attached to the Supplemental Response as Exhibits "B"-"E" do not support the claims made about them. The provided cashier's checks total $69,852 as Ms. Mallon insists and are made payable to Roberts & Shefrin, LLC. *See* Exhibits "B" and "C" as attached to the Supplemental Response. These payments are stated to represent the Debtor's December 2019 lease arrearage installment ($52,500) and the January 2020 base rent due mid-month ($17,352) consistent with the Consent Judgment. Unfortunately for Ms. Mallon, none of them show her as the remitter, and instead identify either the Debtor or Mark Penna. *Id.* The other Exhibits to the Supplemental Response are similarly unhelpful. Exhibit "D" (ostensibly representing cash on hand of Ms. Mallon to demonstrate her ability to pay the January 2020 arrearage installment) is not attached. As to this arrearage payment, Ms. Mallon admits she does not have documentation supporting her claim that she paid $26,240 in cash to Mark Penna that he used to make that payment. Exhibit "E" is supposed to support Ms. Mallon's payment of the February installment arrearage payment. Contrary to the representations in the Supplemental Response, however, there is no copy of the wire transfer attached as Exhibit "E" for $26,240 dated March 3, 2020, or any other proof that Ms. Mallon was the sole source for such funds (other than her bare assertion). Instead, Exhibit "E" is a copy of part of a bank statement of the Debtor dated October 31, 2019. Based on the foregoing, the documents attached to the Supplemental Response as Exhibits "B"-"E" do not substantiate, even partly, any of this portion of the Claim.

reduced amount and would be objected to) and evidently concluded that she did not need to address the Debtor's detailed analysis and proposed reduction of her Claim as set forth in the Objection to Claim. Despite ample time to properly present evidence of her Claim, Ms. Mallon has yet to do so, even with her latest series of pleadings and exhibits, and she is bound by the Order Sustaining Objection to Claim.

On review, although styled as a Motion to Vacate, it might benefit Ms. Mallon if the relief pursued by Ms. Mallon were construed instead as motion for reconsideration.[10] *See* Federal Rule of Bankruptcy Procedure 3008.[11] Under 11 U.S.C. § 502(j), "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." Before considering the equities, the existence of "cause" must first be found. *See Beam v. Chase Home Fin. (In re Beam)*, 510 B.R. 399, 407 (Bankr. N.D. Ga. 2014), citing *Warren v. PNC Bank, Inc. (In re Warren)*, 499 B.R. 914, 918-19 (Bankr. S.D. Ga. 2013); *see also In re JARZ Hospitality Group of Tampa, Inc.*, 626 B.R. 637, 640 (Bankr. M.D. Fla. 2021).[12] "Cause" is not defined in the Bankruptcy Code or Rules, and courts have substantial discretion in making such determination under Section 502(j). *Beam, supra*, 510 B.R. at 407; *JARZ Hospitality Group, supra*, 626 B.R. at 639 (courts use "variety of approaches").[13] The

---

[10] The Motion to Reconsider is also considered under the Rule 60 standard applicable to a motion to vacate *infra*.

[11] Bankruptcy Rule 3008 provides for a hearing, but the Advisory Committee Notes state that a hearing may not be necessary if the court declines to reconsider an order disallowing a claim.

[12] The court *in JARZ Hospitality Group, supra*, 626 B.R. at 641, cites *In re Gomez*, 250 B.R. 397, 400-01 (Bankr. M.D. Fla. 1999) as setting forth factors considered in evaluating the equities.

[13] "Motions for reconsideration are reviewed either under the 'excusable neglect' or the 'good cause' standard." *In re Lambeth Corp.*, 227 B.R. 1, 7 and n. 11 (B.A.P. 1st Cir. 1998). Some courts posit the excusable neglect test as more restrictive (*see e.g. In re Filarski*, 2012 WL 6212853 (Bankr. S.D. Ill. Dec. 13, 2012)), but overall, the analysis under either test is guided to some extent by equitable considerations. *See Lambeth, supra*, 227 B.R. at 8, *discussing Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 387-97, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

following factors have been considered in determining the existence of "cause" under Section 502(j):

> (1) whether granting review will prejudice the debtor or other creditors;
> (2) the length of delay and its impact on efficient court administration;
> (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;
> (4) the presence of good faith;
> (5) whether clients should be penalized for their counsel's mistake or neglect;
> (6) whether the claimant has a meritorious claim.

*Beam, supra*, 510 B.R. at 407, citing *In re Bernard*, 189 B.R. 1017, 1022 (Bankr. N.D. Ga. 1996).

Here, cause has not been shown to support reconsideration of the partial disallowance of the Claim under the above standard. Allowing such a substantial unsecured claim at this stage of the case would not appear to prejudice other claim holders since the Plan provides for up to $146,800 on the Claim (*see* Plan, Sec. 4.6), and considering the Claim may be subject to setoff. Although the length of delay in filing the Motion to Reconsider is not a factor, the delay in finally asserting some basis for the Claim after confirmation of the Plan and disallowance of the Claim will likely be disruptive to an efficient administration of this case. For instance, the Debtor has already moved for entry of a final decree in this case. *See Notice of Substantial Consummation, Termination of Subchapter V Trustee's Services, Final Report, And Application for Final Decree* filed on June 30, 2022 (Docket No. 100). Further, even if Ms. Mallon has tried to offer whatever evidence she has to present, she has not provided any satisfactory explanation for why she waited to file it, leaving any consideration of good faith somewhat uncertain. As to the merits of her Claim, the Court has undertaken a careful analysis of the documents provided by the Mallons in the Motion to Reconsider and finds Ms. Mallon's position remains tenuous, as her evidentiary submissions to date still leave too many questions unanswered and simply do not adequately support the Claim she asserts.

When requested to reconsider claim denials, courts have also applied the standard set forth in Federal Rule of Civil Procedure 60(b)(as applicable herein through Fed.R.Bankr.P. 9024), which incorporates excusable neglect. *See Beam, supra*, 510 B.R. at 408 (evaluating motion under both tests); *In re Cagle*, 2008 WL 7874772, at *2 (Bankr. N.D. Ga. June 2, 2008); *accord JARZ Hospitality Group, supra*, 626 B.R. at 640-41 (determination of cause under Rule 60 proper when court order challenged versus a claim deemed allowed as under confirmed plan).[14] With respect to an analysis under Rule 60(b), Fed.R.Civ.P., relief from an order may be granted for the following reasons:

> (1) Mistake, inadvertence, surprise, or excusable neglect;
> (2) Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> . . . or
> (6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b). Ms. Mallon has similarly failed to assert and/or provide a basis for any of these grounds for reconsideration of the Order Sustaining Objection to Claim.[15] For instance, there is no assertion that Ms. Mallon was unaware of the Objection to Claim or accompanying Notice or any suggestion of mistake, inadvertence, or excusable neglect on her part sufficient to satisfy Rule 60(b)(1). Further, although Ms. Mallon states in the Motion to Vacate that she attempted to provide Debtor's counsel with documentation in support of her Claim on June 29, 2022, counsel replied via return e-mail that they were apparently unable to open the attachments. *See* E-mail

---

[14] In *JARZ*, the order sustaining objection was entered following "negative notice." *But see Filarski, supra*, 2012 WL 6212853.

[15] The decision to grant relief under Rule 60 is "highly discretionary" with the court. *Gibbs v. Nationstar Mortg. LLC (In re Gibbs)*, 2022 WL 850061, at *3 (Bankr. N.D. Ga. Mar. 22, 2022). The Motion to Reconsider was timely filed under Local Rule BLR 9023-1.

9

chain dated June 28, 2022, and June 29, 2022, attached to Debtor's Response as Exhibits "B" and "C". Ms. Mallon has not disputed the counsel's contention that he could not access these documents or that she did not follow up by mailing or otherwise providing copies to Debtor's counsel. Again, Ms. Mallon offers no explanation as to why she could not have timely responded to the Objection to Claim by filing a response if she disagreed with the Debtor's contentions.[16]

Ms. Mallon would appear to have had these documents in her possession prior to the Notice Deadline of July 6, 2022, such that they are not "newly discovered evidence" under the due diligence test of Rule 60(b)(2). *See Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1309 (11th Cir. 2003). As mentioned above, some of these same documents had already been submitted to Debtor's counsel and found wanting in that they did not add up to the amount claimed or were difficult to follow. Counsel had asked for clarification, which was not forthcoming, and only after entry of the Order Sustaining Objection to Claim did Ms. Mallon apparently respond by including additional claims. *See* E-mail from Nate Juster (the Debtor's former counsel) dated April 1, 2022, attached to Objection to Claim as Exhibit "B".

Next, no basis for fraud has been shown under Rule 60(b)(3). As the Debtor makes clear, any suggestion that Ms. Mallon did not file a proof of claim because she relied on a statement of Debtor's former counsel purportedly excusing the need for same is insufficient as the Debtor did

---

[16] In an e-mail to Debtor's counsel dated June 29, 2022, Mr. Mallon refers to two separate attachments, the first being documents assertedly supporting Ms. Mallon's payment of $104,000 under the Consent Judgment to settle the eviction proceeding, and the second being documents previously provided regarding the $83,000 portion of claimed unreimbursed expenses. Mr. Mallon further stated that "[b]ank records demonstrate that the Wells Fargo bank account for Bar Services did not have the money to pay off the judgement. Under the totality of the circumstances, there is economic substance to this portion of her unsecured claim. Again, if there is any difficulty in opening the attachment please let me know immediately and I will send them to you by USPS." As noted above, the Debtor's counsel responded he could not access the files (*see* E-mail chain dated June 29, 2022, attached to the Debtor's Response as Exhibit "B") and Ms. Mallon has not challenged counsel's stated inability to access or receive them. Counsel had also indicated to Mr. Mallon earlier that day that "any discussion between the parties does not substitute for filed pleadings in the Bankruptcy Court." *See* E-mail dated June 29, 2022 (attached to the Debtor's Response as Exhibit "C").

10

not use the absence of a timely filed claim as a reason for its objection.  *See* Objection to Claim, ¶ 16, n. 3.  No other basis of misconduct has been raised and none is evident.[17]  Lastly, Ms. Mallon has not presented any other compelling justification for relief.  *See Rice v. Ford Motor Co.*, 88 F.3d 914, 919 (11th Cir. 1996).

In short, Ms. Mallon may have provided funds to the Debtor on a basis that would have entitled her to a larger claim than the Court previously allowed – but there was a time for her to have provided evidence of such basis and that time has passed.  She did not provide it by the Notice Deadline in response to the Objection to Claim and she still has not provided it to date.  Other than her statements and those of her husband via e-mail, from the documentary evidence presented, Ms. Mallon has not proffered any evidence clearly identifying her as the underlying source of the subject payments, how any funding from her as allegedly made was intended to be used, or whether such funds were in fact so used.  There is also no suggestion as to how such funding was to be characterized, such as a loan, for example, or that such understanding was ever documented in any form.  Further, she has not provided any acceptable reason why that proof could not have been provided by now.

Because Ms. Mallon has not provided enough evidence to demonstrate that there is even a serious possibility that she in fact has a claim greater than has been allowed, and has not asserted any reason at all why she did not or could not do so, her Motion to Reconsider must be denied.

In light of the foregoing discussion, it is hereby

**ORDERED** that the Motion to Reconsider is **DENIED**.

---

[17] Ms. Mallon does not suggest that she was told that she did not need to respond to the Objection to Claim, which is the failure that put her in her current circumstances.  In fact, she was clearly advised to the contrary.  *See* E-mail dated June 29, 2022 (attached to the Debtor's Response as Exhibit "C").

11

The Debtor has also requested that Ms. Mallon pay its attorneys' fees and costs incurred in responding to this matter, but no record of these fees or costs has been presented, and upon consideration of same, it is further

**ORDERED** that the Debtor's request for attorneys' fees and costs is **DENIED**.

The Clerk is directed to serve a copy of this Order upon Ms. Mallon, the Debtor, counsel for the Debtor, the Subchapter V Trustee, and the United States Trustee.

**[END OF ORDER]**